# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **FEMI JAY ISIJOLA,** | ) |
| **Plaintiff,** | ) |
| **v.** | )      **Civil No. 4:23-cv-40156-MRG** |
| **BENJAMIN GRASSO, ANTHONY NUNZIATO, MASSACHUSETTS EXECUTIVE OFFICE OF PUBLIC SAFETY AND SECURITY, MASSACHUSETTS STATE POLICE** | ) |
| **Defendants.** | ) |

## <u>ORDER ON MOTIONS TO DISMISS [ECF Nos. 33 & 41]</u>

**GUZMAN, J.**

 This case arises from interactions between Plaintiff Femi Isijola ("Plaintiff" or "Isijola"), proceeding *pro se*, and Massachusetts State Troopers Benjamin Grasso ("Trooper Grasso") and Anthony Nunziato ("Trooper Nunziato") (together the "Trooper Defendants"). Isijola sues the Trooper Defendants in their official and individual capacities and their employer, Massachusetts State Police ("MSP"), and the Massachusetts Executive Office of Public Safety and Security ("EOPSS").

 In total, Isijola asserts seventeen counts against the Defendants arising out of federal and state civil rights statutes and Massachusetts tort actions. The Trooper Defendants move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). [ECF No. 33]. Defendants EOPSS and

MSP move to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).[1] [ECF No. 41]. For the following reasons, all Defendants' motions to dismiss are **GRANTED**.

## I.    **BACKGROUND**

At the motion for dismiss stage, the following facts are taken as true from the Plaintiff's Amended Complaint. [Am. Compl., ECF No. 28]. However, as a preliminary matter, the Court notes that Isijola's recounting of the events is controverted by facts in state legal proceedings brought by Isijola himself to challenge his license revocation that is the starting point of this action. "It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Rodi v. S. New Eng. Sch. of L., 389 F.3d 5, 19 (1st Cir. 2004) (quoting Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990))). Further, "the jurisprudence of Rule 12(b)(6) permits courts to consider matters that are susceptible to judicial notice." Id. at 12 (citing In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15-16 (1st Cir. 2003)). The Court takes judicial notice of two Massachusetts state court cases initiated by Isijola to appeal his license revocation that began in September 2020: Isijola vs. Bd. of Appeal on Motor Vehicle Liab. Policies & Bonds, No. 2185CV00240 (Worcester Sup. Ct. Jan 9, 2024) ("Superior

---

[1] Isijola argues that MSP's motion to dismiss should be denied because he asserted certain claims against EOPSS and not MSP in his Amended Complaint. [ECF No. 59 at 16-17]. This is clearly erroneous. All the counts that Isijola references in his opposition as applying only to EOPSS are clearly advanced against "All Defendants" or against EOPSS *and* the MSP. [See Counts I-VII in Am. Compl. at 27-61] Also, EOPSS and MSP are named parties on the Amended Complaint. [See Am. Compl.]. Isijola also asserts that Defendant EOPSS failed to correctly oppose his Amended Complaint because the EOPSS and MSP filed a motion to dismiss in which the text of the motion and the memorandum of law accompanying it do not explicitly state the motion is brought on behalf of EOPSS but rather only Defendant MSP. [ECF Nos. 41 & 42]. Thus, Isijola seeks a default judgment [ECF No. 48] and summary judgment against EOPSS. [See ECF No. 59 at 2]. However, the docket shows that the motion to dismiss was filed on behalf of both EOPSS and MSP. [See ECF Nos. 41 & 42]. As detailed further in this order, the Court is granting EOPSS and MSP's motion to dismiss. Thus, the court **DENIES** Plaintiff's request for default judgment and summary judgment as moot. [ECF Nos. 48 & 50].

Court Case"); <u>Isijola v. Bd. of Appeal on Motor Vehicle Liab. Policies & Bonds</u>, 177 N.E.3d 526 (Mass. 2021) ("SJC Case"). The Court will first present the facts as alleged by Isijola, then set out the findings of the state courts regarding the same events.

### A. Events As Told in the Amended Complaint

<u>September 5, 2020</u>

The bulk of Isijola's claims stem from a traffic stop on September 5, 2020. As Isijola was driving on Route 146, he passed the Trooper Defendants' cruiser. Shortly after, the Troopers activated their blue lights to pull Isijola over, and Isijola complied. [Am. Compl. ¶ 16]. Trooper Nunziato informed Isijola that he was stopped because his driver's license was suspended, which Isijola denied, and presently denies. [<u>Id.</u> ¶¶ 18-19]. Isijola offered to show the Trooper Defendants that the Massachusetts Registry of Motor Vehicles website showed that his license was active, but the Troopers ignored his offer. [<u>Id.</u> ¶ 19]. After running a query on Isijola, Trooper Grasso asked Isijola to step out of his motor vehicle. [<u>Id.</u> ¶¶ 20-21]. Isijola stepped out of his vehicle and the Trooper Defendants handcuffed him, placed him in their cruiser, and searched and inventoried his vehicle. [<u>Id.</u> ¶ 22]. The Trooper Defendants issued Isijola a citation for driving with a revoked license and driving at 72 miles per hour in a posted 65 miles per hour zone. [<u>Id.</u> ¶ 24]. Isijola again urged the Trooper Defendants that his driver's license was active, and asserts that the license number attributed to him in the citation was different from his own. [<u>Id.</u> ¶ 24]. Isijola also denies driving over the posted speed limit. [<u>Id.</u> ¶ 42]. The Trooper Defendants called a tow truck to retrieve Isijola's vehicle. [<u>Id.</u> ¶ 24].

Subsequently, the Trooper Defendants stated they would be taking Isijola to the Millbury Police Barracks for processing; however, Isijola asserts that en route to the barracks, the Trooper

Defendants dropped him off at an unknown location and returned his license, wallet, passport, and social security card but left him without transportation. [Id. ¶ 27].

With the help of a family member, Isijola made his way over to the towing company that had towed his car, but when he arrived, the towing company informed him that Trooper Grasso had directed the company to refuse to return the car to Isijola because he did not have a valid Massachusetts driver's license. [Id. ¶ 30].  Instead, the towing company allowed Isijola's family member to retrieve the car. [Id. ¶ 32].

After this interaction with Trooper Defendants, Isijola spoke with Sergeant Harris, the desk officer on duty at the Millbury Police Barracks. [Id. ¶ 35]. Isijola informed Harris of what happened, and, according to Isijola, Harris stated that the Trooper Defendants' behavior was "unacceptable." [Id.] Harris gave Isijola a phone number of the Millbury Police Barracks to call if he experienced similar treatment from Trooper Defendants again. [Id.]

<u>September 8, 2020</u>

The Trooper Defendants again pulled Isijola over on Route 146 on September 8, 2020 and did not provide reason for doing so before running a query on Isijola. [Id. at ¶¶ 36-37]. They asked for his license and registration, which Isijola provided. [Id. ¶ 37]. While he was waiting in the car, Isijola called the phone number for the Millbury Barracks that Harris gave him and reported that he had been unlawfully stopped by the Trooper Defendants. [Id. ¶ 38]. Isijola asserts that after a conversation with the desk officer at the barracks,[2] Trooper Nunziato returned to Isijola's car, gave him his license back, and informed him that he was free to go. [Id. ¶ 39].

<u>The Criminal Proceedings</u>

---

[2] It is unclear whether the Trooper Defendants were called or whether the only conversation was between Plaintiff and the person working on the line of the number given to him.

4

On September 16, 2020, the State Police in Millbury filed an application for a criminal complaint against Isijola in Uxbridge District Court, seeking to charge him with driving with a suspended license and driving over the posted speed limit. [Id. ¶ 41]. The court scheduled a hearing before a magistrate judge for November 12, 2020. [Id. ¶ 40]. The Trooper Defendants failed to appear for the magistrate's hearing on November 12, 2020. [Id. ¶ 42]. According to Isijola, the magistrate denied the application for Isijola's two-count criminal complaint, finding no probable cause. [Id. ¶ 43].

**B. Isijola's License Revocation As Revealed in State Court Proceedings**

As stated above, the Court takes judicial notice of two state court proceedings initiated by Isijola regarding the revocation of his license. While he asserts in this federal action that his license was never revoked and the September 2020 stops for driving with a revoked license were unlawful, in his Superior Court Case, Isijola attached to an affidavit a letter he received from the Massachusetts Registry of Motor Vehicles ("MA RMV") dated 9/16/2020, which states that he had two suspensions of his license: the latter beginning on 9/26/2020 based on an offense on 8/5/2020, and the former **indefinite** suspension that became effective on **8/5/2020**. See Superior Court Case, No. 2185CV00240, Dkt. No. 58, *attached hereto as* Ex. A. Further, in an appeal of one of Isijola's cases, the Supreme Judicial Court of Massachusetts ("SJC") stated that Isijola's license indeed had been revoked during the time period in question:

> In September 2020, the [Massachusetts] registry of motor vehicles (registry) notified Isijola that it was suspending his driver's license on the basis that the New Hampshire Department of Safety, Division of Motor Vehicles, had suspended his driver's license in New Hampshire. Isijola appealed to the Board of Appeal on Motor Vehicle Liability Policies and Bonds (board), which upheld the registry's decision. Isijola then commenced an action in the Superior Court pursuant to G. L. c. 30A, § 14, in March 2021, seeking judicial review of the board's decision.

<u>Isijola v. Bd. of Appeal on Motor Vehicle Liab. Policies & Bonds</u>, 177 N.E.3d 526, 527 (Mass. 2021) ("SJC Case").[3] The Worcester Superior Court adopted this recitation of facts in issuing its judgment affirming Isijola's license revocation, stating "the decision of the Board of Appeal on Motor Vehicle Liability Policies and Bonds was supported by substantial evidence and was not arbitrary or capricious or otherwise based on an error of law." Superior Court Case, Mem. & Order (Bell, J.), Dkt. No. 94 (Feb 1, 2023). The Superior Court judgment also stated that Isijola's license was suspended in New Hampshire because Isijola made materially false statements in applying for a New Hampshire license. <u>See id.</u> at 2. This revocation led to a statutory obligation for the MA RMV to "immediately revoke [the Plaintiff's] license without a prior hearing." <u>Id.</u> at 6 (citing Mass. Gen. Laws ch. 90, § 22(c)).

The verified court documents taken from the respective state court dockets completely controvert Isijola's main assertion that his was unlawfully stopped for having a revoked license in September 2020 because his license was valid at the time. [<u>See</u> Am. Compl. ¶ 24 ("Plaintiff Isijola know [sic] for a fact at the time that his valid driver's license that ends with the last four digit numbers of 0390 was active"). Documents that Isijola *himself* submitted in the Superior Court case prove that his statements in his Amended Complaint in this case regarding his license revocation are patently false given that his license had been suspended since at least August 5, 2020 and that he was notified as such by the RMV. <u>See</u> Superior Court Case, No. 2185CV00240, Dkt. No. 58, *attached hereto as* Ex. A.

---

[3] While the Massachusetts cases were never referred to in the filings for this case, the Court verifies that Isijola is the same plaintiff in both cases. <u>Compare</u> Superior Court Case, Dkt No. 23 at 2 (Notice of Appeal), *attached hereto as* Ex. B, <u>with</u> [Am. Compl. ¶ 1] (listing both plaintiffs as "Femi Isijola" with the same Leominster address); <u>compare</u> Superior Court Case, Dkt No. 58, *attached hereto as* Ex. A (Suspension Notice Letter from the MA RMV), <u>with</u> [ECF No. 28 at 5] (both showing the same last four digits of Isijola's license as 0390).

Making misrepresentations to the Court is sanctionable conduct. <u>See</u> Fed. R. Civ. P. 11(b). Intentional misrepresentations that are designed to mislead the court – conduct that is also called, "fraud on the court" – can be grounds for dismissal. <u>See</u> <u>Aoude v. Mobil Oil Corp.</u>, 892 F.2d 1115, 1118 (1st Cir. 1989) ("A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." (collecting cases)). Dismissal for fraud on the court is extreme and requires balancing "the policy favoring adjudication on the merits with competing policies such as the need to maintain institutional integrity and the desirability of deterring future misconduct." <u>Id.</u> (collecting cases). Because the Court is granting the present motion to dismiss on other grounds, the Court declines to consider the delicate calculation necessary to find fraud on the court. However, the Court notes that Isijola's omission of information regarding the suspension of his driver's license may be independent grounds for dismissal. Additionally, Isijola's lack of candidness before the Court is only the latest instance of a pattern of contumacious conduct previously highlighted in the Court's order on Plaintiff's motion for recusal. [<u>See</u> ECF No. 110].

## II.    <u>LEGAL STANDARDS</u>

"When faced with motions to dismiss under both 12(b)(1)[4] and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." <u>Ayyadurai</u>

---

[4] Defendant MSP mistakenly frames its motion to dismiss [ECF No. 41] as pursuant to Fed. R. Civ. P. 12(b)(6). Its arguments in the accompanying memorandum of law [ECF No. 42] directs the Court consider subject matter jurisdiction. Thus, the Court considers its Motion as a Motion for Lack of Subject Matter Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

v. Galvin, 560 F. Supp. 3d 406, 410 (D. Mass. 2021) (quoting Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., 62 F.3d 37, 39 (1st Cir. 1995)).

The Defendants move to dismiss based on claims of sovereign immunity under the Eleventh Amendment or state law. Such challenges are properly treated as motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105 (1st Cir. 2015) ("Eleventh Amendment questions are often labeled jurisdictional[.]") (quoting Parella v. Ret. Bd. of Rhode Island Employees' Ret. Sys., 173 F.3d 46, 55 (1st Cir. 1999)). "When a defendant moves to dismiss for lack of federal subject matter jurisdiction, [] 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995), cert. denied, 515 U.S. 1144 (1995)). "If the party fails to demonstrate a basis for jurisdiction, the district court must grant the motion to dismiss." Id. The district court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor" when ruling on a Rule 12(b)(1) motion. Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citing Valentin v. Hospital Bella Vista, 254 F.3d at 358, 363 (1st Cir. 2001)). A plaintiff cannot assert a proper jurisdictional basis "merely on unsupported conclusions or interpretations of law" or "[s]ubjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts[.]" Murphy, 45 F.3d at 522 (citations omitted). In evaluating whether the party has met its burden of proof, the court "may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations." Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000).

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citation omitted). In order to survive a Rule 12(b)(6) motion, the complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). In this context, plausible "means something more than merely possible," Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-80 (2009)), and the pleadings must set forth allegations respecting each material element necessary to sustain recovery under an actionable legal theory. Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).

*Pro se* pleadings are held to "less demanding standards than those drafted by lawyers" and are read liberally on a motion to dismiss. Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000). Even *pro se* plaintiffs must, however, follow procedural rules and dismissal is appropriate when the court lacks jurisdiction or when the complaint fails to suggest an actionable claim. Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001) (citation omitted).

## III.   **DISCUSSION**

Defendants MA EOPSS and MSP argue they are immune from suit under the Eleventh Amendment. Likewise, the Trooper Defendants argue the Eleventh Amendment or state statutory sovereign immunity doctrines bars suits against them with respect to claims asserted against them in their official capacities. As discussed below, the Court agrees and **GRANTS** Defendants EOPSS

and MSP's Motion to Dismiss [ECF No. 41], as well as the Trooper Defendants' Motion to Dismiss as to the claims against them. [ECF No. 33].

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The amendment "has been construed to bar all suits against a state for damages in the federal courts, regardless of the citizenship of the plaintiff." Cline v. Burke, 682 F. Supp. 3d 125, 131 (D. Mass. 2023) (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 15 (1890)); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted).

State sovereign immunity is not absolute. "States may consent to suit in federal court, and, in certain cases, Congress may abrogate the States' sovereign immunity." Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990) (citations omitted). Moreover, a plaintiff may also seek prospective relief against state officials acting in violation of federal law under the principles set forth in Ex parte Young. Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004). As such, Isijola can establish the Court's subject matter jurisdiction over the claims against EOPSS, MSP, and the Trooper Defendants in their official capacity only if he can show (1) that Congress has abrogated the Commonwealth's sovereign immunity, (2) that the Commonwealth waived its sovereign immunity, or (3) that he is seeking prospective relief to remedy an ongoing violation of federal law. The Court will address each of these in turn.

### 1. Congress Has Not Abrogated the Commonwealth's Immunity

It is undisputed that Section 1983 does not abrogate the Commonwealth's sovereign immunity. See Quern v. Jordan, 440 U.S. 332, 341-42 (1979) ("[W]e simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."). Because state officials acting in their official capacity are considered an extension of the state, the Trooper Defendants, like the state agencies (EOPSS and MSP), are entitled to sovereign immunity and cannot individually constitute a "person" under Section 1983. See Will, 491 U.S. at 71 (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). This analysis applies equally to Isijola's claims arising under Sections 1981 and 1985. See Howell v. Mass. AG, No. 21-11979-ADB, 2022 U.S. Dist. LEXIS 126498, at *9 (D. Mass. July 18, 2022); Santiago v. Keyes, 839 F. Supp. 2d 421, 428 (D. Mass. 2012). Therefore, Congress has not abrogated the Commonwealth's immunity.

### 2. The Commonwealth Has Not Waived Its Sovereign Immunity

"The Eleventh Amendment also bars suits in federal court against states and state officers alleging violations of state law, regardless of the form of relief sought[,] . . . unless the state has waived its immunity." Canales v. Gatzunis, 979 F. Supp. 2d 164, 173 (D. Mass. 2013).

Counts XI-XVII of the Complaint bring various state law tort claims against the Defendants. The Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258 ("MCTA"), "preserves municipal immunity for 'any claim arising out of an intentional tort'" including for all the tort-based claims advanced by Isijola. See M.G.L c. 258, § 10(c) (barring municipal and state liability for false arrest (Count XI), false imprisonment (Count XII), malicious prosecution (Count XIII), intentional mental distress (Count XIV), invasion of privacy (Count XVI), and malicious abuse of process (Count XVII)); see also Wood v. City of Haverhill, No. 1:23-cv-12377-JEK, 2024 U.S. Dist. LEXIS 165174, at *41 (D. Mass. Sep. 13, 2024). While Isijola pleads his emotional distress

claims as either negligent (Count XV), reckless (Count XIV), or intentional infliction (also Count XIV), to the extent the claim does not fall under the MTCA's provision on intentional torts, the claim is barred for another reason.[5]  Although the MTCA provides a limited waiver of the Commonwealth's sovereign immunity for certain tort claims, see Mass. Gen. Laws. ch. 258, § 2, that waiver does not apply to suits brought under the statute in federal court.[6] Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003) ("By enacting the [MTCA], the Commonwealth has not waived its Eleventh Amendment immunity to suit in federal court."). Indeed, the MTCA provides that, the Massachusetts Superior Courts have "exclusive jurisdiction over claims brought under the statute." Morrissey v. Massachusetts, No. 18-11386-MBB, 2022 WL 1463051, at *13 (D. Mass. May 9, 2022) (quoting Wolski v. Gardner Police Dep't, 411 F. Supp. 3d 187, 193 (D. Mass. 2019)). The Commonwealth has not waived its immunity for claims of intentional torts nor from tort suits in federal court, and, accordingly, this Court lacks jurisdiction over Isijola's tort claims.  Id. The First Circuit and courts in this District have "consistently held that claims brought under the [MTCA] in federal court ought [to] be dismissed." Wolski, 411 F. Supp. 3d at 193.  Accordingly, Counts XI-XVII are **<u>DISMISSED</u>** against EOPSS, MSP, and the Trooper Defendants in their official capacities.

---

[5] Plaintiff cannot circumvent the Commonwealth's sovereign immunity by framing his tort claims as arising under common law. See Canales, 979 F. Supp. 2d at 176 ("Plaintiffs may not assert common-law negligence claims to avoid compliance with the MTCA.").

[6] Moreover, the MTCA provides that the limited waiver provided under Mass. Gen. Laws ch. 258, § 2 does not apply to "any claim arising out of an intentional tort, including … intentional mental distress," among others. Mass Gen. Laws ch. 258, § 10(c). This Court has previously found that although Mass. Gen. Laws. ch. 258, § 10(c) "does not specifically enumerate conspiracy, [it] still contemplates such claims 'by the language of § 10(c) in that the essence of civil conspiracy claim is the intent to act in concert with another to the detriment of a third party.'" Wentworth Precious Metals, LLC v. City of Everett, No. 11-10909-DPW, 2013 WL 441094, at *14 (D. Mass. Feb. 4, 2013) (quoting Leatham v. Donell, No. 954539B, 1996 WL 1251390, at *2 (Mass. Super. Ct. Aug. 9, 1996)).

Further, while the MTCA does not apply to claims of intentional tort against defendants acting in their *individual* capacities, when a complaint fails to allege that those defendants acted *outside* of their official capacities, the Court construes the defendants' actions as occurring purely within their *official* capacities. See Bache v. Town of Boxborough, No. 21-11187-FDS, 2022 U.S. Dist. LEXIS 23018, at *10 (D. Mass. Feb. 9, 2022) (emphasis added) (finding the complaint failed to state a claim of intentional tort against a police officer in his individual capacity because it did not allege he acted outside of his official capacity while enforcing a court order). In this case, Isijola fails to allege that the Trooper Defendants acted in any way outside of their official capacities as State Troopers and, therefore, has failed to allege any intentional tort against them in their individual capacities. As such, to the extent that Isijola believes he asserted tort claims against the Trooper Defendants in their individual capacities, he is mistaken and Counts XI-XVII are **DISMISSED** for the reasons stated above.

Count X of the Amended Complaint asserts a claim under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H-11J ("MCRA") against the Trooper Defendants. As with Isijola's claims arising under Sections 1983 and 1985, the Commonwealth, its agencies, and state officials acting in their official capacity are not "persons" within the meaning of the MCRA. Powell v. Massachusetts, No. 16-cv-30004-MGM, 2016 WL 7115887, at *12 (D. Mass. Sept. 20, 2016) ("Massachusetts state courts have held that 'the Commonwealth [including its agencies] is not a 'person' for purposes of [the MCRA.]" (first alteration in original)); Santiago, 839 F. Supp. 2d at 428 ("Piggybacking on the Supreme Court's section 1983 analysis in Will, Massachusetts state courts, to date, have invariably held that they 'should reach the same result under the State Civil Rights Act[.]'" (citations omitted)). Accordingly, the MCRA does not abrogate the

Commonwealth's sovereign immunity and the Court will **<u>GRANT</u>** the motion to dismiss as to Count X against the Trooper Defendants in their official capacities.

Similarly to Isijola's tort claims, in his Count X MCRA claim, Isijola fails to allege any facts that would indicate the Trooper Defendants were acting outside of their official capacities as State Troopers. [<u>See</u> Compl. ¶¶ 213, 214 (describing Trooper Defendants' conduct as "pressuring" him to step out of his vehicle and arresting him)]. Therefore, Isijola has failed to state a claim against the Trooper Defendants in their individual capacities for Count X. See <u>Bache</u>, 2022 U.S. Dist. LEXIS 23018, at *10. Even if he had, any MCRA claim brought against the Trooper Defendants in their individual capacities would be time-barred.[7]

### 3.  <u>Ex parte Young's Exception to the Eleventh Amendment</u>

"While the Eleventh Amendment prohibits a party from bringing suit against a state in federal court, it does not prohibit a party from bringing suit against a state officer in federal court for prospective declaratory or injunctive relief under federal law." <u>Asociación De Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza</u>, 484 F.3d 1, 24 (1st Cir. 2007) (first internal citation omitted) (citing <u>Ex parte Young</u>, 209 U.S. 123, 155 (1908)). <u>Ex parte Young</u> thus provides an exception to the Eleventh Amendment's jurisdictional bar "in cases where prospective declaratory or injunctive relief is sought under federal law.'" <u>Mills v. Maine</u>, 118 F.3d 37, 54 (1st Cir. 1997). Under <u>Ex parte Young</u>'s exception, individuals can sue state officials only for prospective injunctive relief. <u>See</u> <u>Rosie D. ex rel. John D. v. Swift</u>, 310 F.3d 230, 234 (1st Cir.

---

[7] The MCRA contains a three-year statute of limitations. Mass. Gen. L. ch. 260, §5B. Accrual for purposes of a claim under the MCRA is determined by state law. <u>Coll. Hill Props., LLC v. City of Worcester</u>, 135 F. Supp. 3d 10, 18 (D. Mass. 2015). For the reasons stated in the Trooper Defendants' Joint Reply, [ECF No. 78 at 2-6], the Court rejects Isijola's arguments and finds the three-year statute of limitations for Count X began to accrue on September 8, 2020, the date of the second stop. [<u>See</u> Am. Compl. ¶ 36]. Isijola filed his initial complaint on November 13, 2023, beyond the three years allotted for MCRA claims. [<u>See</u> ECF No. 1].

2002). It does not permit "judgments against state officers declaring that they violated federal law in the past" or any other claims for "retrospective relief," including damages. <u>P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 145-46 (1993) (citing <u>Green v. Mansour</u>, 474 U.S. 64, 73 (1985)).

Isijola does not seek prospective injunctive relief, but only seeks retroactive damages from all Defendants. Therefore, the <u>Ex Parte Young</u> exception cannot apply to his federal claims and Isijola's claims arising under 42 U.S.C. §§ 1981, 1983, and 1985 are barred by the Eleventh Amendment. Accordingly, the Court lacks subject matter jurisdiction over the claims and **<u>GRANTS</u>** all Defendants' motions to dismiss as to Counts I-IX.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motions to Dismiss [ECF Nos. 33 & 41] are **<u>GRANTED</u>** as to all claims against all Defendants and the case is **<u>DISMISSED</u>**.


**SO ORDERED.**

Dated: February 20, 2025

  /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge

# EXHIBIT A

 

REGISTRY OF MOTOR VEHICLES

## SUSPENSION OF DRIVER'S LICENSE/RIGHT TO OPERATE

|ılıılıı·ı[ılıll[ılıılıⁱ'ıl[lıⁱlıⁱllⁱ[lıⁱllⁱ|ⁱⁱ[ılⁱⁱ[lⁱⁱ|lⁱⁱllⁱ

Date: 09/16/2020

FEMI EASYJAY ISIJOLA
68 MAIN ST UNIT 474
LEOMINSTER MA  01453-7827

Letter ID: L0310376256

Customer ID: S███0390

D.O.B: 16-Feb-1977

USPS ID: 933886

Dear FEMI ISIJOLA:

 **Why did you receive this correspondence?**

You are hereby notified that effective 09/26/2020, your license/right to operate a motor vehicle is suspended for 60 DAYS because of a disposition pursuant to MGL, .  A description of the offense(s) are noted below:

| Offense Date | Offense / Location | Court |
|---|---|---|
| 08/05/2020 | D02 - MISREPRESENT ID FOR LIC / NEW HAMPSHIRE | N/A |

RMV records also indicate that the following suspension(s) are also in effect on your license/right to operate.

| Suspension Date | Suspension Type | Period of Suspension |
|---|---|---|
| 08/05/2020 | NRVC WITHDRAWAL | INDEFINITE |

Pursuant to Section 62 of Chapter 90 of the General laws, notification is being provided to your local police department, including name, address, and reason for the suspension or revocation.  Notice is also provided following reissuance.

 **What do you need to do?**

When your license/right to operate has been suspended, you must immediately cease to operate all motor vehicles until your license/right to operate has been reinstated.  During this time you may not apply for a license or learner's permit.  If you are a non-resident, you must cease to operate all motor vehicles within the Commonwealth of Massachusetts.

If the above applies to the registration of your motor vehicle, operation of such vehicle must cease at once and the registration certificate and plate(s) must be surrendered to the RMV immediately.

Massachusetts Registry of Motor Vehicles | P.O. Box 55889, Boston, MA 02205-5889 | mass.gov/rmv

Page  1  of  2

18

Hearing days vary by location and are subject to change without notice, please check mass.gov/rmv to see if hearings are currently available in the service center you wish to visit.

If your revocation is the result of a court conviction for driving under the influence of alcohol, pursuant to MGL, c. 90, § 24, you may appeal your conviction to the Superior Court. In all cases, if you are aggrieved by a decision or order of the Registrar you may, within ten days of the effective date of the Registrar's order, appeal to the Board of Appeal on Motor Vehicle Liability, Policies and Bonds, 1000 Washington St., 8th Floor, Boston, MA 02118. You can download an appeal application from their website at www.mass.gov/doi/boa or call them at 617-521-7794. No appeal will stay the suspension or revocation order and you must still comply with the above directive.

**$** **Are you responsible for any fees?**

You will be required to pay a $100 - $1200 fee for this suspension, provided you are eligible.

**?** **What if you have questions?**

If you have questions, go to mass.gov/rmv or call our Contact Center at (857) 368-8200.

Sincerely,

*Jamey Tesler*

Jamey Tesler
Registrar of
Motor Vehicles

# <u>EXHIBIT B</u>

**COMMONWEALTH OF MASSACHUSETTS**

WORCESTER, SS

MASSACHUSETTS APPEALS COURT
DOCKET NO. 2021-J-0387
LOWER COURT DOCKET NO: 2185CV00240

IN RE: FEMI E. ISIJOLA
PLAINTIFF

vs.

**BOARD OF APPEAL ON MOTOR VEHICLE
LIABILITY POLICIES AND BONDS.
DEFENDANT**

RECEIVED

SEP 01 2021

APPEALS COURT

AMENDED NOTICE OF APPEAL

Femi E. Isijola ("Plaintiff/Appellant") files the instant Notice of Appeal of

the appealable Order of the Single Justice of the Massachusetts Appeals Court,

(Lemire, J ) entered on the docket on August 30, 2021 affirming the Illegal

Motion to Stay of the Lower Court over a Judicial Review requested by Plaintiff

Femi Isijola pursuant to Mass G.L. c. 30A, Section 14 and denying all Reliefs

requested by Plaintiff/Appellant Femi E. Isijola  and Plaintiff Isijola now appeal

to the Massachusetts Appeals Full Court pursuant to Mass. General Law

Chapter 231, Section 118 (second paragraph) for Abuse of Discretion by the

Single Justice.

This Notice of Appeal is signed by Plaintiff/Appellant Isijola pursuant to

Rule 3(c)(1) of the Massachusetts Rules of Appellate Procedure and has been

timely filed within thirty (30) days of entry of the Order appealed from pursuant

to Rule 4(a) of the Massachusetts Rules of Appellate Procedure.

FILED

SEP 07 2021

ATTEST: _____ CLERK

20

Please also include all supporting documents that include the Transcript.

Dated: September 2, 2021

Femi E. Isijola, Pro Se Litigant
68 Main Street, Unit 474
Leominster, MA 01453
(413) 333-6580
femisijola.dlaw@aol.com

RECEIVED

SEP 01 2021

APPEALS COURT